# JOSEPH G. SCHANIL v. B. J. BRANTON AND ANOTHER.[1]

October 24, 1930.

No. 27,832.

*George W. Peterson,* for appellants.
*Edward Lindquist* and *L. J. Lauerman,* for respondent.

[1]Reported in 232 N. W. 708.

DIBELL, J.

An action to recover for malpractice. There was a verdict for the plaintiff, and defendants appeal from the order denying their alternative motion for judgment or a new trial.

■ The plaintiff was injured on October 3, 1926, and on that day was taken to the defendants' hospital for treatment. He was discharged from the hospital on November 19, 1926. There was then a cast upon his leg. He returned for examination in January, 1927, and again in February. The action was commenced on November 15, 1928.

The defendants claim that the two-year statute of limitations, G. S. 1923, § 9193, as amended, 2 Mason, 1927, id. limiting actions for malpractice to two years, is a bar to this action. The effect of the statute was determined adversely to the defendants' contention in Schmitt v. Esser, 178 Minn. 82, 226 N. W. 196; and Bush v. Cress, 178 Minn. 482, 227 N. W. 432, where we held that it did not commence to run until the treatment ended. The action was brought well within the time. Further discussion is unnecessary. It may be noted that the statute is not pleaded.

■ There was no error in allowing an amendment to the effect that the defendants were copartners. A joint employment was alleged in the original complaint and was admitted. Before two pages of testimony were taken, it was proved by one of the defendants that he and his brother, the other defendant, were associated in the practice of medicine and operated the Willmar Hospital, a corporation, and were copartners in the practice of medicine and the operation of the hospital. There was no suggestion that a partnership liability was not involved, and we cannot think that the amendment alleging that the two defendants were copartners was erroneous, nor that the holding of Whittaker v. Collins, 34 Minn. 299, 25 N. W. 632, 57 Am. R. 55, is of helpful or controlling application; nor did the amendment introduce a cause of action, so that the date of the amendment, March 22, 1929, would be taken as the determining date of the commencement of the action in finding whether the statute was a bar. 4 Dunnell, Minn. Dig. (2 ed.) § 5664.

■ The plaintiff, a farmer, was kicked in his right leg by a horse on October 3, 1926. The injury resulted in a comminuted fracture below the knee extending from two inches below the kneecap four or five inches. The tibia and fibula were both broken, and the edges were extremely ragged. The fracture was a bad one and one difficult to treat.

The plaintiff was taken to the hospital operated by the defendants at Willmar for treatment. The defendants used a so-called Thomas splint. It is unnecessary to describe the method of its use in detail. The evidence indicates that it is in general use, and no negligence can be claimed because it rather than a cast was used in treating the injury of the plaintiff. It is claimed on his behalf that insufficient traction was applied and that the foot in the hood of the splint was held so loosely that it rotated; and that as a result there is a reversion of the right foot so that it interferes with the left in walking, the great toe of the right foot catching the heel of the left. Negligence could not be found in using a Thomas splint instead of a cast. There is evidence however from which a jury might find negligence in treating the leg resulting in the deformity. Two physicians testifying for the plaintiff gave opinion evidence of improper treatment. The weighing of their testimony was for the jury. The two defendants and several physicians testifying for them indicate proper treatment throughout. The plaintiff's injury was a serious one. That there was not a perfect recovery is not surprising. The evidence however is such as to sustain a finding of the jury that there was negligence resulting in damage. It was a fact case.

■ The measure of the plaintiff's damages is the difference between the condition at the close of the treatment and as it would have been if he had received ordinarily careful treatment. It is the amount of damages caused by the negligence of the defendants, not including damages for his original injury, nor could he recover damages for pain and suffering incident upon his original injury.

■ The court in its general charge instructed the jury that:

"It is the claim of plaintiff that defendants did not exercise reasonable care in the treatment of the fracture while it was healing,

particularly in that they failed to keep the leg stretched out in proper alignment, and because of this lack of reasonable care plaintiff's leg became bowed and the foot inverted or turned in. * * *

"The defendants claim that they properly reduced the fracture, used the proper method of caring for the leg while the bones were knitting, and used reasonable care in treating the leg, and that the present condition of the leg is due to causes over which they had no control. * * *

"A physician or surgeon is not an insurer that he will effect a cure. He is held to a reasonable amount of diligence and skill and is liable only for injuries that result from his neglect to exercise that degree of care and skill. * * * So then, I repeat, a physician and surgeon is held to a reasonable amount of diligence, care and skill and is liable only for injuries that result from his neglect to exercise such degree of care and skill."

The charge quoted was correct and with other instructions in connection therewith fairly stated the scope of the defendants' liability.

On damages the court instructed:

"The damages to be allowed, if any, should be such as to fairly compensate for the injury sustained, and in determining the amount you may take into consideration the nature, character, and extent of the injury sustained; whether or not, and if so, to what extent the injury is permanent; the bodily pain and mental suffering endured by the plaintiff; and all the damages which have been shown by the evidence which have resulted and will result from the injury."

This was at the close of the instructions as to the general law applicable to the case, and the court made this inquiry of counsel: "Are there any suggestions?" Counsel for the defendants called attention to a statement made by one of the defendants as to the care given the plaintiff, and a satisfactory correction was made; nothing further was asked.

The defendants requested instructions covering three pages. Requested instruction No. 8 was upon proximate cause, except the last three lines, which were as follows:

"And the damages are limited to what were caused, if any, by the negligence of the physician, and do not include what followed from the kick of the horse."

It was refused with others. No exception was taken at the time, but error was assigned on the motion for a new trial. It might have been given well enough. It was in a request covering other matter. If specifically pointed out doubtless it would have been given. It was negative in form.

It seems a bit ridiculous that it would ever occur to jurors in a malpractice suit that the plaintiff could recover of the defendants for a kick given him by his horse or from any injury taken by him to a physician for treatment. Counsel did not think these matters of consequence or he would have called the attention of the court to them, especially after an invitation, to which he had responded in part. The charge as a whole stated the proper rule as to damages, and we think it impossible that the jury was misled by inadvertent statements which would have been corrected if called to the court's attention.

■ The verdict was for $8,000. The plaintiff is a farmer, 38 years of age, cultivating his own land. He lost a great deal of time, suffered considerably, and has a humiliating deformity which will go with him. The damages are not so excessive as to require our interference.

Order affirmed.