Argued November 1, reversed December 28, 1966

# BERRY *v.* BRANNER

421 P. 2d 996

*Robert G. Sevier,* La Grande, argued the cause and filed the brief for appellant.

*William H. Morrison,* Portland, argued the cause for respondent. With him on the brief were David C. Landis, and Morrison and Bailey, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

HOLMAN, J.

Plaintiff instituted an action against defendant claiming damages because of alleged medical malpractice. She claimed that in June of 1956 defendant performed a hysterectomy upon her and negligently left a surgical needle within her abdomen and:

> "* * * That, approximately two months after said operation, plaintiff experienced great pain in her lower back and upper leg. Said symptoms did not indicate a problem lying within the field of gynecology and thus within the specialty of defendant so that plaintiff was required to and did seek treatment from another physician. That plaintiff diligently and continuously sought to determine the cause of her pain; that the existence of the surgical needle in her abdomen was not discovered until August 12, 1965 and determined to be the cause of plaintiff's pain; * * *."

Defendant filed a demurrer upon the ground that the action had not been commenced within the time limited by statute. The demurrer was sustained. Plaintiff appealed from the trial court's order of dismissal which followed her refusal to plead further.

The sole question presented here is whether a cause of action for medical malpractice accrues at the

time of the negligent act or omission, or at the time it was or might reasonably have been discovered. The relevant statutes provide:

ORS 12.010. "Actions at law shall only be commenced within the period prescribed in this chapter, after the cause of action shall have *accrued,* except where a different limitation is prescribed by statute. * * *" (Emphasis added.)

ORS 12.110(1). "(1) An action for assault, battery, false imprisonment, for criminal conversation, or *for any injury to the person* or rights of another, *not arising on contract,* and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." (Emphasis added.)

\* \* \* \* \*

The present controversy revolves around the meaning of the word "accrued." Does it denote the time when the defendant took the action which resulted in plaintiff's injuries, or does it mean the time when plaintiff discovered or reasonably should have discovered defendant's wrong?

This exact question was determined in a manner contrary to plaintiff's position by a four to three decision of this court in the case of *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964). Both sides of the question were there exhaustively examined by the majority and dissenting opinions. After an analysis of the statutory history it was the opinion of the majority that the legislature intended the cause of action to accrue upon the happening of the event which caused the injury and not upon discovery by the patient. It is the court's present opinion that in the prevailing opinion in the *Vaughn* case too much emphasis was

put upon legislative intent as deduced from the statutory history and not enough was placed upon legislative intent as determined from the ordinary legal meaning of the word "accrued."

The principal phenomenon of statutory history which convinced the majority in the *Vaughn* case that it was the intent of the legislature to have the cause of action accrue upon the occurrence of the malpractice rather than upon its discovery, was the fact that the legislature had expressly adopted the discovery rule as to fraud and deceit but not as to malpractice. The validity of this reasoning is dependent upon the supposition that the legislature, in adopting the discovery principle as to fraud, had in mind undiscovered malpractice as well and nevertheless decided against the adoption of the discovery principle as to it. We do not now believe that this necessarily follows. Any number of things could have occurred which brought the inequities of the fraud situation to the legislature's attention without it ever having considered analogous situations which might exist in other fields. For instance, did the legislature also have in mind the situation where a landowner tunnels underground and removes coal from the adjoining land without the knowledge or means of knowledge by his neighbor?[1] There are undoubtedly many other more or less similar situations.[2] Did the legislature have them all in mind and reject them all?

The fact that the legislature saw fit to clarify the time of accrual with regard to undiscovered fraud does

---

[1] See Lewey, Appellant, v. Fricke Coke Co., 166 Pa 536, 31 A 261 (1895).

[2] See Smith, Aplnt. v. Bell Telephone Co. of Pa., 397 Pa 134, 153 A2d 477, 481 (1959); Brush Beryllium Company v. Meckley, 284 F2d 797 (CA6 N Div Ohio 1960).

not necessarily mean that it was the original legislative intent that the discovery principle not apply in fraud cases. Where the original statute was ambiguous, is it not just as reasonable to assume that the legislature pointed out the construction they had intended from the outset?

■ It is contended that the failure of the legislature to pass bills in both the 1963 and 1965 sessions which would have ameliorated the harshness of the *Vaughn* rule shows that the legislature is cognizant of the problem and desires no change. The fallacy in this argument is that no one knows why the legislature did not pass the proposed measures. The measures provided that the statute should commence to run upon discovery but that regardless of discovery there should be an overall limit upon the time within which an action could be brought. Did the legislature fail to pass the measures because it was satisfied with the *Vaughn* interpretations of the statute or because it was not in favor of an overall limitation, or because it disliked the length of the overall limitation? The practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation. Legislative inaction is a weak reed upon which to lean in determining legislative intent.

■ Legislative inaction as to malpractice should not be ignored in determining legislative intent but such inaction is not necessarily determinative in the face of the ordinary meaning of "accrued" as it is used in relation to a cause of action. The word "accrue" is derived from the Latin "ad" and "creso" to grow to. When applied to independent or original demands it means to arise, to happen, to come into force or ex-

istence. *When used with reference to a cause of action it means when an action may be maintained thereon.* It accrues whenever one person may sue another. *Black's Law Dictionary,* 4th ed and cases cited therein. The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, "You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy," makes a mockery of the law. *Rosane v. Senger,* 112 Colo 363, 149 P2d 372, 375 (1944). In the absence of an expressed statutory direction to that effect, to ascribe to the legislature any such intention by their use of the word "accrue" seems to us unreasonable.

■ The objective of a statutory limitation on the time within which an action may be brought is, in malpractice cases, the protection of medical practitioners from the assertion of stale claims. We do not believe the legislature intended to limit patients asserting malpractice claims, who by the very nature of the treatment had no way of immediately ascertaining their injury, to the same overall period of time that is allowed for bringing other tort actions that are normally immediately ascertainable upon commission of the wrong. The protection of the medical profession from stale claims does not require such a harsh rule. The mischief the statute was intended to remedy was delay in the assertion of a legal right by one who had slumbered for the statutory period during which process

was within his reach. *Lewey, Appellant v. Fricke Coke Co.,* 166 Pa 536, 548, 31 A 261 (1895).

The contention is made that a decision of this kind amounts to judicial legislation. The legislature, however, did not provide that the time of accrual was when the physician performed the negligent act. This court did. The legislature left the matter undetermined. A determination that the time of accrual is the time of discovery is no more judicial legislation than a determination that it is the time of the commission of the act. *Morgan v. Grace Hospital,* 149 W Va 783, 144 SE2d 156, 160 (1965).

■ There is no object in an exhaustive discussion of the cases from other jurisdictions which were mentioned in *Vaughn.* The opinions in' that case adequately covered them. An examination of the cases decided subsequent to those discussed in *Vaughn* indicates that the trend is away from that decision.[3] Those decisions discussed in *Vaughn* indicated that the states of California,[4] Colorado,[5] Michigan,[6] Nebraska,[7] New Jersey,[8] and Pennsylvania,[9] as well as

---

[3] Waldman v. Rohrbaugh, 241 Md 137, 215 A2d 825, 830 (1966); Pasquale v. Chandler, 1966 Mass Adv Sh 475, 215 NE2d 319, 322 (1966); Morgan v. Grace Hospital, 149 W Vir 783, 144 SE2d 156, 162 (1965). See 16 Clev Mar L Rev (1) 65, 71 (1967); 1 Portia L J (2) 202, 203 (1966).

[4] Weinstock v. Eissler, 224 CA2d 212, 36 Cal Rptr 537 (1964).

[5] Rosane v. Senger, 112 Colo 363, 149 P2d 372 (1944).

[6] Johnson v. Caldwell, 371 Mich 368, 123 NW2d 785 (1963).

[7] Spath v. Morrow, 174 Neb 38, 115 NW2d 581 (1962).

[8] Fernandi v. Strully, 35 NJ 434, 173 A2d 277 (1961); disapproving Weistein v. Blanchard, 109 NJL 332, 162 A 601 (1932), which was cited by the majority in support of their position in Vaughn v. Langmack, supra. Also see Rothman v. Silber, 83 NJS 192, 199 A2d 86 (1964).

[9] Ayres, Appellant v. Morgan, 397 Pa 282, 154 A2d 788 (1959); also see Schaffer, Appellant v. Larzelere, 410 Pa 402, 189 A2d 267, 270 (1963).

certain federal cases[10] held that the statute of limitations in malpractice cases commenced to run from discovery, or the time discovery could reasonably have been made. To those states might also be added the following: Florida,[11] Louisiana,[12] Maryland,[13] and Oklahoma,[14] as well as other federal cases.[15] In addition the states of Idaho,[16] Montana,[17] and West Virginia,[18] whose decisions previously supported *Vaughn* have now overruled their prior holdings. This leaves the states of Georgia,[19] Indiana,[20] Illinois,[21] Kansas,[22] Ken-

[10] Urie v. Thompson, 337 US 163, 168-171, 93 L ed 1282, 69 S Ct 1018, 11 ALR2d 252 (1949); United States v. Reid, 251 F2d 691 (CA5 1958); Quinton v. United States, 304 F2d 234 (CA5 1962).

[11] City of Miami v. Brooks, 70 So2d 306 (Fla 1954).

[12] Springer v. Aetna Casualty & Surety Co., 169 So2d 171, 173 (La App 1964); Perrin v. Rodriguez, 153 So 555 (La App 1934).

[13] Waldman v. Rohrbaugh, 241 Md 137, 215 A2d 825, 830 (1966).

[14] Seitz v. Jones, 370 P2d 300 (Okl 1961).

[15] Kossick v. United States, 300 F2d 933, cert den 379 US 837, 13 L ed2d 44, 85 S Ct 73 (1964), disagreeing with Tessier v. United States, 269 F2d 305 (1 Cir 1959) cited by majority in Vaughn v. Langmack; Kuhne v. United States, 250 F Supp 523 (E D Tenn ND 1965); Beech v. United States, 345 F2d 872 (CA5 Tex 1965).

[16] Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P2d 224 (1964); inconsistent with Trimming v. Howard, 52 Idaho 412, 16 P2d 661 (1932); Owens v. White, 342 F2d 817 (CA9 Idaho 1965).

[17] Johnson v. St. Patrick's Hospital, — Mont —, 417 P2d 469 (1966), which is inconsistent with Coady v. Reins, 1 Mont 424 (1872) cited by the majority in Vaughn v. Langmack.

[18] Morgan v. Grace Hospital, 149 W Va 783, 144 SE2d 156 (1965); expressly disapproving Baker v. Hendrix, 126 W Va 37, 27 SE2d 275 (1943), and Gray v. Wright, 142 W Va 490, 96 SE2d 671 (1957).

[19] Silvertooth v. Shallenberger, 49 Ga App 133, 174 SE 365 (1934).

[20] Guy v. Schuldt et al, 236 Ind 101, 138 NE2d 891 (1956).

[21] Mosby v. Michael Reese Hospital, 49 Ill App2d 336, 199 NE2d 633 (1964).

[22] Hill v. Hays, 193 Kan 453, 395 P2d 298 (1964); Waddell v. Woods, 160 Kan 481, 163 P2d 348 (1945).

tucky,[23] Maine,[24] Massachusetts,[25] Mississippi,[26] New Mexico,[27] New York,[28] Ohio,[29] Tennessee,[30] Virginia,[31] Vermont,[32] Washington,[33] and Wisconsin,[34] as apparently still following what has been termed the majority rule. When one looks at these cases, however, it is readily apparent that so-called "exceptions" have in many instances been developed to alleviate the hardship imposed by the majority rule. As a consequence some rather tenuous theories are espoused by many jurisdictions.[35] It is the opinion of this court that the

[23] Philpot v. Stacy, 371 SW3d 11 (Ky 1963); Tantish v. Szendey, 158 Me 228, 182 A2d 660 (1962).

[24] Tantish v. Szendey, 158 Me 228, 182 A2d 660 (1962).

[25] Pasquale v. Chandler, 1966 Mass Adv Sh 475, 215 NE2d 319 (1966).

[26] Wilder v. St. Joseph Hosp. et al, 225 Miss 42, 82 So2d 651 (1955).

[27] Roybal v. White, 72 NM 285, 383 P2d 250 (1963).

[28] Seger v. Cornwell, 44 Misc 2d 994, 255 NYS2d 744 (1964).

[29] Pump v. Fox, 177 NE2d 520 (Ohio Ct App 1961); DeLong v. Campbell, 157 Ohio St 22, 104 NE2d 177 (1952).

[30] Albert v. Sherman, 167 Tenn 133, 67 SW2d 140 (1934).

[31] Hawks v. DeHart, 206 Va 810, 146 SE2d 187 (1966).

[32] Murray v. Allen, 103 Vt 373, 154 A 678 (1931).

[33] Lindquist v. Mullen, 45 Wash 2d 675, 277 P2d 724 (1954); McCoy v. Stevens, 182 Wash 55, 44 P2d 797 (1935).

[34] McCluskey v. Thranow, 31 Wis2d 245, 142 NW2d 787 (1966); Reistad v. Manz, 11 Wis2d 155, 105 NW2d 324 (1960).

[35] Morrison v. Acton, 68 Ariz 27, 198 P2d 590 (1948); Burton v. Tribble, 189 Ark 58, 70 SW2d 503 (1934); Crosset Health Center v. Crosswell, 221 Ark 874, 256 SW2d 548 (1953); Davis v. Bonebrake, 135 Colo 506, 313 P2d 982 (1957); Silvertooth v. Shallenberger, 49 Ga App 133, 174 SE 365 (1934); Guy v. Schuldt et al, 236 Ind 101, 138 NE2d 891 (1956); Schanil v. Branton, 181 Minn 381, 382, 232 NW 708 (1930); Schmit v. Esser, 183 Minn 354, 236 NW 622 (1931); Sly v. Van Lengen, 120 Misc 420, 198 NYS 608 (1923); Hammer v. Rosen, 7 NY2d 376, 165 NE2d 756, 757 (1960); Pump v. Fox, 177 NE2d 520 (Ohio Ct App 1961); Lundberg v. Hospital, 175 Ohio 133, 191 NE2d 821, 823 (1963); Brush Beryllium v. Meckley, 284 F2d 797 (CA6, N Div Ohio 1960); Allison v. Blewett, 348 SW2d 182 (Tex Civ App 1961); Peteler v. Robinson, 81 Utah 535, 17 P2d 244 (1932); McCoy v. Stevens, 182 Wash 55, 44 P2d 797 (1935).

cause of action accrued at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant. The case of *Vaughn v. Langmack* is overruled.

Some compassion is due trial judges who must rely on prior decisions of this court. When this court changes the goal posts trial courts must necessarily be reversed through no lack of judicial acumen on their part. The judgment of the trial court in sustaining defendant's demurrer is reversed and the case is remanded for further proceedings.

McALLISTER, C. J., dissenting.

For the reasons stated by LUSK, J., in *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964), I dissent.

PERRY, J., dissenting.

While I am convinced that injustices have occurred in the past due to our present statute of limitations and that justice would be better served if the period of limitation was delayed until such time as a patient discovered or reasonably could have discovered that a tort had been committed upon his person, I am equally convinced that the statute will not logically or reasonably permit the interpretation placed upon it by the majority.

The reasons in law which will not permit the majority's interpretation are well stated by this court in *Wilder v. Haworth,* 187 Or 688, 213 P2d 797 (1950); and again in *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964).

Malpractice is a tort committed against the person of the plaintiff and it is the universal rule that causes of action for torts inflicted upon the person of an

individual run from the time the injury is inflicted, not from the time the extent of the damage is ascertained. Wood on Limitations, 4th ed, § 179.

I am unable to discern how we can conscientiously distinguish the accrual of this cause of action from that received by a person in an automobile accident who is apparently uninjured but years later discovers that the slight trauma produced cancer. But, regardless of unsettling the law applicable to reach an equitable result, it is the duty of the legislature to determine as a matter of public policy matters relating to the statutes of limitation.

In regard to the observation that the legislature did not consider the effect of the statute on malpractice injuries, it is interesting to note that in the 1963 session of the legislature the following bill was introduced which passed the House and was defeated in the Senate:

"Section 1. An action to recover damages for injury to the person caused by malpractice of a physician, dentist, podiatrist or operator of a hospital or sanitarium shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within four years from the date of the act or omission upon which the action is based."

And again in the 1965 session of the legislature the following bill was introduced, passed the House and was again defeated in the Senate:

"Section 1. An action to recover damages for injury to the person caused by malpractice of a physician, dentist, podiatrist, or operator of a hospital or sanitarium, shall be commenced within two years from the date when the injury is first dis-

covered or in the exercise of reasonable care should have discovered; provided that such action shall be commenced within four years from the date of the act or omission upon which the action is based."

Since the representatives of the people have demonstrated that they are cognizant of the problem and up to this time have not seen fit to change the statute as it has been twice interpreted by this court, first in 1950 and again in 1964, to say the least, it is presumptious for this court to do so.

For the above reasons, I dissent.