Bertha B. HERNANDEZ, Individually and as Executrix of the Estate of Andres B. Hernandez, Deceased, et al., Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. C–5130.

United States District Court, D. Colorado.

Oct. 3, 1974.

Earle H. Warner, Lakewood, Colo., for plaintiffs.

James L. Treece, U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION

ARRAJ, Chief Judge.

Plaintiff seeks recovery under the Federal Tort Claims Act (specifically,

28 U.S.C. § 1346), for the wrongful death of her husband. She alleges that agents and employees of the Denver Veterans Administration Hospital were negligent in failing to discover or disclose the presence of malignant cells in tissue removed from decedent's stomach during exploratory surgery at defendant's hospital. Plaintiff further contends that this failure prevented decedent from obtaining timely medical attention, and that such negligence proximately resulted in his premature death. The case is now before us for resolution of the issue of what, if any, are the proper limits of recovery, should liability be established.

■ Under 28 U.S.C. § 1346(b), damages in this action are to be determined by the law of the state where the tort was committed. The parties agree that the alleged tort occurred in Colorado, and that the Colorado Wrongful Death Act (C.R.S. (1963), 41–1–1 to 41–1–4, as amended) applies. [*See,* United States v. Haskins, 395 F.2d 503 (10th Cir. 1968); Bartch v. United States, 330 F. 2d 466 (10th Cir. 1964)]

## I. *Maximum Limits Upon Recovery*

In 1967 the Colorado General Assembly amended the Wrongful Death Act, increasing the damage limits from $25,000 to $35,000. In 1969, the provision was again amended, this time abrogating the limits of recovery in their entirety, for cases, such as this one, where the decedent leaves a widow, minor children, or dependent parents. Defendant maintains that the $35,000 limit applies to this action because the statute, as amended in 1967, controls, while plaintiff contends that there is no limit, since the 1969 amendment governs damages.

The issue turns on the proper construction of C.R.S. § 41–1–3(2) which provides:

> This section [limiting damages] shall apply to a cause of action based on a wrongful act, neglect or default occur-

ring on or after the effective date of this act. *A cause of action based on a wrongful act, neglect or default occurring prior to the effective date of this section shall be governed by the law in force and effect at the time of such wrongful act, neglect or default.* (emphasis added)

The amendment ending the dollar limitations on wrongful death recoveries became effective on July 1, 1969. Decedent in the present case was operated on August 5, 1968 and died June 11, 1972. If we determine that the "wrongful act, neglect or default" *occurred* prior to July 1, 1969, then damages on the wrongful death claim are limited to $35,000. If we find that it occurred on or after that date, there is no dollar limit upon recovery.

Neither the parties' nor the court's own research disclose any precedent interpreting the term "occurring" in section 3 of the Colorado's death statute or any similar statute. We are thus left to analogize from the law governing related issues in the law of torts, to an examination of legislative intent, and to an analysis of the logical meaning of the statutory language.

■ Plaintiff maintains that the wrongful act, neglect or default alleged in her complaint did not occur until a cause of action against the defendant had "accrued." Indeed, a majority of courts now hold that, for purposes of the statute of limitations contained in the Federal Tort Claims Act [28 U.S.C. § 2401(b)], a claim against the government does not accrue until ". . . the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [negligence]." [Quinton v. United States, 304 F.2d 234, 240 (5th Cir. 1962)] If this standard were accepted as the definition of "occurrence," we might well find that the wrongful act, neglect or default occurred after the crucial date of July 1, 1969.[1] However,

---

1. There is some indication that decedent did not learn of his condition until some time in

1972, shortly before his death. The "reasonable time for discovery" was probably not

it appears to us that this analogy to the statute of limitations is inapposite to the issue now before us.

The purpose of the "time of discovery" rule in statute of limitations cases was examined at length in Berry v. Branner, 245 Or. 307, 421 P.2d 996 (1966):

> The objective of the statutory limitation on the time within which an action may be brought is, in malpractice cases, the protection of medical practitioners from the assertion of stale claims. We do not believe the legislature intended to limit patients asserting malpractice claims, who by the very nature of the treatment had no way of immediately ascertaining their injury. . . . (*Id.* 421 P.2d at 998–999)

Where a plaintiff has not yet discovered, nor could he reasonably be expected to have discovered, the commission of a tort, we cannot say that he has procrastinated in bringing suit. This is especially true where the defendant conceals or hinders discovery of the tort. [*See, e. g.,* Murphy v. Dyer, 260 F.Supp. 822 (D.Colo.1966)] Consequently, the law does not permit the statute of limitations to run against the unsuspecting and unknowing plaintiff.

This is entirely different from our present problem. Here we are not asked to determine whether the plaintiff's action should be barred by his lack of diligence; instead we are interested in the state law in effect at a specific time. That law itself directs us to apply its provisions as they were in force at the time the wrongful act, neglect or default occurred, and not when a *cause of action* was discovered or when it accrued. That there is a difference between the time the negligence occurs and the time when the cause of action accrues is reflected by other language appearing in *Berry, supra*:

The sole question presented here is whether a cause of action for medical malpractice accrues at the time of the negligent act or omission, *or* at the time it was or might reasonably have been discovered. (*Id.* 421 P.2d at 997) (emphasis added)

■ We believe that the correct definition of "occurrence" depends upon other analogies and other reasoning. "Occurrence" denotes an event or episode which, like the tree that falls deep in the wilderness, happens even though a particular person may not witness it. The language used by Colorado's General Assembly suggests that the time of the wrongful act, neglect or default's occurrence must be determined as an *objective fact*, without reference to the subjective elements of the "time of discovery" or accrual rules just discussed.

■ In Manemann v. United States, 381 F.2d 704 (10th Cir. 1967), the court faced a factual situation nearly identical to the one now before us. There the plaintiff, while residing in Taiwan, was examined by a military doctor for possible tuberculosis. The doctor advised him that he was not infected with the disease. Some three years later the presence of the disease was established. The court ruled that the action was barred by 28 U.S.C. § 2680(k) of the Federal Tort Claims Act which excludes from the general waiver of the government's tort immunity any action "arising" in a foreign country. The court ruled that the tort had arisen in Taiwan, but to reach this conclusion it was necessary to first decide *when* the wrongful "act or omission" occurred:

> It is of course true, as a generality, that a mere act of negligence is not legally tortious and becomes an actionable wrong, a tort, only when harm results to the claimant. Damage is the *last event necessary* to impose liability. . . .
>
> . . . . . .

long before his actual discovery. Consequently, the "accrual rule" would fix the time of the "wrongful act, neglect or default's" occurrence after July 1, 1969, and the no limit amendment would, in those circumstances, apply.

Although an act of negligence, here the misdiagnosis, is not actionable without damage it is apparent that after damage occurs *the initial premise of the tort is the negligence.* The liability of the United States for the completed tort shall be "in accordance with the law of the place where *the act or omission* (negligence) *occurred."* (*Id.* at 705) (emphasis added)

The court reasoned that a tortious act or omission occurred when and where the *negligence* occurred and explicitly rejected plaintiff's contention that the "time or place of an accrued cause of action" was relevant to a choice of law issue. It is important to recognize that the plaintiff in *Manemann* could not have discovered the commission of the tort until long after the wrongful act or omission "occurred," as that time was determined by the court. We believe the same reasoning applies to the present controversy.

■ ■ Here, defendant's agents were under a duty to use reasonable care in examining the sample tissue. [*See, e. g.,* Dickinson v. Mailliard, 175 N.W.2d 588 (Iowa 1970)] If such care was not exercised, this duty was breached. The wrongful act was, therefore, completed when the laboratory examination was finished and the erroneous diagnosis was reported. According to plaintiff's Pretrial Statement, Uncontroverted Fact Number 5, this report was made on August 8, 1968, several months before July 1, 1969 when the no-limit amendment to Colorado's death statute became effective. We hold, therefore, that if defendant is found liable for misdiagnosis, damages for the wrongful death claim are limited to $35,000.

■ Plaintiff's allegations, however, are not limited to defendant's misdiagnosis. She also alleges that defendant failed to *disclose* the presence of malignant cells in the tissue sample after having properly discovered such cells. Such failure to disclose is, by its very nature, a more continuous breach of legal duty than is the discrete act or acts of misdiagnosis. The alleged failure to report the laboratory findings is a negligent *omission* rather than commission. [*See,* W. Prosser, The Law of Torts § 56, at 338–40 (4th ed. 1971) for a discussion of misfeasance and nonfeasance.] But in Hungerford v. United States, 307 F. 2d 99 (9th Cir. 1962), the court treated as coextensive the duty to properly diagnose and the duty to communicate to the patient a correct diagnosis. Moreover, the Colorado General Assembly selected the phrase, "wrongful act, neglect *or default,"* to govern application of amendments to the damages limitation of the death statute. This indicates a legislative intent to treat negligent acts and negligent omissions identically. Finally, the principle set forth in *Manemann, supra* was expressly made applicable to both acts and omissions. (*Id.* at 381 F. 2d at 705)

A duty to make such a disclosure of material fact has long been recognized. [*See, e. g.,* Wohlgemuth v. Meyer, 139 Cal.App.2d 326, 293 P.2d 816 (1956)] Applying *Manemann* to the instant case, it appears that the wrongful default occurred, if at all, when the failure to disclose became tortious negligence, or in other words, when the duty to disclose was *first* breached. This conclusion is best understood by example. Assume that ten days after the operation was a reasonable time for discovery and disclosure of decedent's condition. If, by the eleventh day, disclosure had not been made, a technical breach of duty existed. But a one day delay probably did not adversely affect decedent's treatment prospects. In short, no tort had yet occurred because there was no legally cognizable injury. After some period of time, say two months, the delay in disclosure did jeopardize decedent's treatment prospects. Now the damage, which *Manemann* specifies as "the last event necessary to impose liability," has occurred and the tort is completed. Once the tort is completed, *Manemann* tells us the time of the wrongful *default*

relates back to the moment the duty to disclose was first breached.

Admittedly, both the duty to disclose and its breach continued long beyond the time the negligent omission first "occurred" and persisted even after the *fact* of damage existed. Indeed, defendant's continuous breach caused an ever-increasing loss in decedent's life expectancy. Such additional loss, over and above that necessary to "complete" the tort (i. e., to establish the fact of damage), did not constitute a distinct ground for liability or a separate tort; instead, it merely amplified the *extent* of injury and increased the amount of damages which plaintiff suffered.

As already observed, if defendant's agents in fact discovered the presence of cancer, they were under a duty to report this finding as soon as possible. When they failed to do so within a reasonable time, they breached this duty, and the "wrongful default" had occurred. We find that a "reasonable time" for such disclosure ended shortly after the diagnosis was completed and certainly long before the crucial date of July 1, 1969. It appears, therefore, that wrongful death damages, under either a misdiagnosis or a failure-to-disclose theory of liability, are limited to $35,000.

Perhaps in anticipation of the foregoing conclusion, plaintiff has raised the question of specific items of damage which she maintains are recoverable in addition to those permitted (and limited) by the Colorado Wrongful Death Act. She urges recognition of four such categories of "independent" damages:

 The first category includes "[h]ospital, medical, funeral, and other expenses arising from the illness and death of decedent." Even though such items are recoverable under the Wrongful Death Act, they may not be limited by the $35,000 ceiling, because the reme-dy provided by the death statute is not exclusive. [*See*, Espinoza v. Gurule, 144 Colo. 381, 356 P.2d 891 (1960)] This category of damage *is* compensable under the Colorado *survival statute* [C.R.S. (1963), 153–1–9, as amended, ch. 451, § 5 (1973) Colo.Sess.Laws, p. 1647, *and intended to be designated as*, C.R.S. (1973), 41–5–1] [*See*, United States v. Haskin, 395 F.2d 503 (10th Cir. 1968)] Recovery under the survival statute requires that suit be brought on behalf of the decedent's estate. Plaintiff has commenced this action in several capacities, including that of executrix of her late husband's estate. Consequently, she can recover all medical, hospital, and related expenses incurred by and charged against decedent's estate *prior* to his death, which expenses were proximately caused by defendant's negligence.[2] Such recovery is independent of the limits of the Wrongful Death Act. Funeral expenses, though incurred after death, can also be recovered under the survival statute, and are, therefore, similarly not included in those damages limited to $35,000. [*See*, Kling v. Phayer, 130 Colo. 158, 274 P.2d 97 (1954)]

 Plaintiff also seeks compensation for any "loss of time," as usually measured by "loss of earnings," sustained by decedent prior to his death. Such damage, to the extent caused by defendant's negligence, is also recoverable under the survival statute and is not subject to the death statute's limits. [*See*, Nemer v. Anderson, 151 Colo. 411, 378 P.2d 841 (1963)]

 In addition to her capacity as executrix, plaintiff has brought this action individually, as widow of the decedent. In this latter capacity she may recover for "loss of consortium" between the time the tort occurred and the date of decedent's death. This is also an independent category, not to be included in

2. Note that plaintiff does not allege that defendant's negligence caused decedent's cancer or his ultimate death, but rather that it caused a shortening of his life expectancy as that expectancy would be measured for a cancer patient of decedent's age whose con-dition was accurately diagnosed and promptly reported in August of 1968. Accordingly, damages for wrongful death and for the "independent" damage categories will be limited by these factors.

those damages limited to $35,000. [*See,* American Ins. Co. v. Naylor, 101 Colo. 41, 70 P.2d 353 (1937)][3]

 Finally, plaintiff seeks compensation for the value of nursing services she provided to her husband. She may recover these in her individual capacity, free from the limitations of the Wrongful Death Act, but again subject to the limits of proximate cause. [*See,* p. 173, n. 2, *supra*] [Adams v. Erickson, 394 F.2d 171 (10th Cir. 1968)]

In summary, we hold that those items of damage which are recoverable only under the death statute are limited to a total net pecuniary loss, not to exceed $35,000, and further, that the above enumerated categories of damage which can be recovered pursuant to other statutes or the common law of Colorado may be awarded independent of the $35,000 limit. If defendant's liability is established, damages will be measured in accordance with this opinion.

---

3. The bar to recovery by a wife for loss of consortium which existed at common law was abrogated by C.R.S. (1963), 90–2–11.