John HAHN, Wade Liggett, Joseph Aizawa, V. G. Livingston, and D. Hugh Fraser, Plaintiffs,

v.

OREGON PHYSICIANS' SERVICE, an Oregon nonprofit corporation and Physicians' Association of Clackamas County, an Oregon nonprofit corporation, Defendants.

John HAHN, V. G. Livingston, Hide Aizawa, and D. Hugh Fraser, Plaintiffs,

v.

PORTLAND METRO HEALTH PHYSICIANS, INC., an Oregon nonprofit corporation, and Portland Metro Health, Inc., an Oregon nonprofit corporation, Defendants.

Lawrence HELTON, David Hoyal, Wade Liggett, Elmer Dorr, Hide Aizawa, and Jeffrey L. Widen, Plaintiffs,

v.

ROGUE VALLEY PHYSICIANS' SERVICE, an Oregon nonprofit corporation; and Klamath Medical Service Bureau, an Oregon nonprofit corporation, Defendants.

Lawrence HELTON, David Hoyal, and Jeffrey Widen, Plaintiffs,

v.

GREATER OREGON HEALTH SERVICES, Inc., Defendant.

Civ. Nos. 78–0887, 79–0191, 79–0199 and 79–0200.

United States District Court, D. Oregon.

Feb. 27, 1981.

N. Robert Stoll, Stoll & Stoll, P. C., Portland, Or., for plaintiffs.

Thomas M. Triplett, Schwabe, Williamson, Wyatt, Moore, & Roberts, Portland, Or., for defendants Portland Metro Health Physicians, Inc., Portland Metro Health, Inc., Klamath Medical Services Bureau, and Greater Oregon Health Services, Inc.

Norman J. Wiener, William B. Crow, R. Alan Wight, Miller, Anderson, Nash, Yerke, & Wiener, Portland, Or., for defendants Oregon Physicians' Service and Rogue Valley Physicians' Service.

Donald B. Bowerman, Nancy Tauman, Hibbard, Caldwell, Canning, Bowerman, & Schulte, Oregon City, Or., for defendant Physicians' Association of Clackamas County.

Gene L. Brown, Brown, Hughes, Bird, & Lane, Grants Pass, Or., for defendant Rogue Valley Physicians' Service.

SOLOMON, District Judge:

## INTRODUCTION

Plaintiffs are Doctors of Podiatric Medicine (Podiatrists) licensed to practice in Oregon under ORS § 682.010. In 1978, they filed these actions against the defendants,[1] who are state regulated health care contractors;[2] a federally regulated Health Maintenance Organization (HMO); and a federally regulated Individual Practice Association.[3]

Plaintiffs allege that the defendants have conspired or combined to boycott podiatrists' services in favor of physicians licensed by the Oregon Board of Medical Examiners, in violation of the Clayton Act, 15 U.S.C. § 12 et seq., and the Sherman Act, 15 U.S.C. § 1 et seq.

Plaintiffs challenge three kinds of practices. They first assert that defendants require their insureds to obtain some podiatric services solely from a Medical Doctor (M.D.). They next assert that defendants' insureds are discouraged from using podia-

---

1. Present defendants are: Oregon Physicians' Service (OPS), Physicians' Association of Clackamas County (PACC), Rogue Valley Physicians' Service (RVPS), Klamath Medical Service Bureau (KMSB), and Greater Oregon Health Service (GOHS), all health care contractors under ORS § 750.005 et seq.; Portland Metro Health Physicians (PMHP), a federally regulated individual practice association; and Portland Metro Health (PMH), a federally regulated individual practice association.

2. ORS § 750.005(2)(a) defines "health care service contractor" as:
   Any corporation organized not for profit that is sponsored by or otherwise intimately connected with a group of doctors licensed by this state, or by a group of hospitals licensed by this state, or both which accepts prepayment for health care services...

3. HMOs provide basic and supplemental health services to its members for a payment which is paid periodically without regard to the dates health services are provided. Their payment is fixed without regard to the frequency, extent, or kind of service actually furnished. 42 U.S.C. § 300e
   An "individual practice association" is:
   ... A partnership, corporation, association, or other legal entity which has entered into a services arrangement (or arrangements) with persons who are licensed to practice medicine ... podiatry, ... or other health profession in the state and a majority of whom are licensed to practice medicine or osteopathy ... 42 U.S.C. § 300e-1(5)

trists because they are not covered for that care unless they are referred to a podiatrist by an M.D. They also assert that because podiatrists are not members of the defendant health insurers, they are reimbursed for their services to defendants' insureds at a lower rate than are M.D.'s who are members of the defendants.

Defendants seek summary judgment on the following grounds:

1. Defendants are exempt from antitrust liability under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*;

2. Defendants are exempt from antitrust liability under the state action doctrine and the governmental immunity doctrine;

·3. The court lacks jurisdiction because the acts complained of neither take place in nor affect interstate commerce;

4. State regulatory authorities have exclusive jurisdiction or primary jurisdiction over these claims, and plaintiffs have not exhausted their administrative remedies.

## I. *McCARRAN-FERGUSON ACT*

■ To qualify for an exemption under the McCarran-Ferguson Act, three conditions must be satisfied. First, the anticompetitive practices must be part of the business of insurance, not merely the business of insurance companies.[4] Second, those practices must be regulated by state law.[5] Third, the anticompetitive practices cannot take the form of coercion, intimidation, or boycott.[6]

## A. *Business of Insurance*

■ Both plaintiffs and defendants rely principally on two cases, *Group Life and Health Insurance Co. v. Royal Drug*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) (*"Royal Drug"*), and *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 624 F.2d 476 (4th Cir. 1980) (*"Virginia Academy"*).

In *Royal Drug*, independent pharmacists filed an action against Blue Shield of Texas and three pharmacists who had provider agreements with Blue Shield. Under these agreements, an insured who purchased prescription drugs from a participating pharmacist paid only two dollars for the prescription, and the pharmacist recovered the full price of the prescription from Blue Shield. But an insured who purchased the prescription from a non-participating pharmacist paid the full price, and would then be reimbursed by Blue Shield for 75% of the full price less two dollars.

Any licensed pharmacy could participate, but participation was limited to those pharmacists willing to accept a two dollar markup. Plaintiffs contended that this arrangement was anticompetitive because it discouraged Blue Shield's insureds from using the non-participating pharmacists. An insured using a non-participating pharmacist was required to request reimbursement from Blue Shield, and would pay more for their prescriptions.

The District Court granted Blue Shield's motion for summary judgment based on the

---

4. 15 U.S.C. § 1011:
   Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

5. 15 U.S.C. § 1012:
   (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
   (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which im-

poses a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

6. 15 U.S.C. § 1013(b):
   (b) Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

McCarran-Ferguson Act exemption. The Supreme Court, when it reversed, ruled that these agreements were not the business of insurance, but only the business of insurance companies.

It defined "business of insurance" as the spreading and underwriting of risk, and held that although Blue Shield's arrangement with participating pharmacists reduced the cost of prescription drugs for its insureds, Blue Shield did not spread or underwrite an insured's risk. The agreements were not exempt.

This case differs from *Royal Drug* in two significant aspects. First, the agreements challenged in *Royal Drug* were not agreements between the insurer and the insured, but agreements between the insurer and the pharmacy-providers. Here, the agreement challenged is the insurance contract between the insurer and the insured. Second, the *Royal Drug* agreements did not spread or underwrite the risk of providing coverage for prescription drugs; they merely lowered the cost of providing the coverage. Here, the alleged restraints are an integral part of the risk of covering care to the foot.

The risk assumed by defendants, as underwriters of medical care to the foot, is affected by their determination that their risk would be greater if podiatrists were permitted to treat their insureds equally with M.D.'s.

Defendants' conclusion is supported by the licensing provisions for these professions in the Oregon Revised Statutes. Unlike M.D.'s, podiatrists may not perform:

treatment involving the use of a general or spinal anesthetic unless the treatment is performed in a hospital ... and is under the supervision of or in collaboration with a physician licensed to practice medicine by the Board of Medical Examiners for the State of Oregon. 'Podiatry' does not include the administration of general or spinal anesthetic or the amputation of the foot. ORS § 682.010(3)

Many services may be performed either by podiatrists or by M.D.'s. But there are other services involving the foot which podiatrists may not perform. There is a rational basis for the limitations in the policy on the coverage of podiatric care for their insureds.

In *Virginia Academy*, plaintiffs, an organization of clinical psychologists, challenged Blue Shield's deliberate refusal to obey a Virginia statute which required health care organizations to pay directly for services rendered by licensed psychologists. Blue Shield would not allow payment for psychotherapy rendered by psychologists unless the treatment was supervised and billed through an M.D. The District Court ruled that the activity was exempt under the McCarran-Ferguson Act, and the Court of Appeals reversed.

The Court of Appeals held that "defendants' conduct was not the 'business of insurance.'" 624 F.2d at 483. The court struck the provisions in the insurance policy which granted reimbursement for care by a psychologist only if the care was billed through an M.D. The court stated that this decision by the insurance company was not related to coverage for mental or nervous disorders, but only involved who the company would pay for the services rendered in the treatment of such disorders.

This holding and statement must be considered in connection with Virginia's "Freedom of Choice" statute, Va.Code § 38.1–824, which prohibits health insurers from refusing, "directly or indirectly, to allow or pay for ... services rendered by any ... psychologist ..."

The insurance policy covered treatment for mental and nervous disorders, which both psychologists and M.D.'s were licensed to treat, and under Virginia Law, a health insurer may not, in covering its insureds for these disorders, refuse to treat psychologists on the same basis as M.D.'s. Therefore, a provision in an insurance policy which grants its insureds reimbursement for care by a psychologist only if billed through an M.D. violates Virginia law, and the court was justified in striking the offensive provision.

In Oregon, there is no such law affecting podiatrists. On several occasions, podiatrists and other health care professionals, such as dentists, psychologists, nurse practitioners, denturists, and optometrists, have sought similar legislation. Although the Oregon legislature enacted laws to provide equality of insurance treatment for these professionals, podiatrists were not successful in having a similar statute enacted. I believe this is some evidence that the legislature did not intend to treat podiatrists equally with M.D.'s in connection with insurance reimbursement.

In my view, the qualifications of physicians, podiatrists, and other members of the healing arts, and the nature and extent of the services such persons may perform, are essential elements in the risk which health care insurance companies may legally define. Therefore, the defendants were privileged to determine that the care provided by podiatrists increased the risk over that of an M.D., for the same type of service. This is particularly true in Oregon, where there is no equality statute.

I therefore hold that the decision of the defendants to limit their risk by imposing restrictions on podiatric care insurance qualifies as the "business of insurance" for purposes of the McCarran-Ferguson Act.

**B.  State Regulation**

■ The second requirement of the McCarran-Ferguson Act is that the business of insurance be regulated by state law. 15 U.S.C. § 1012(b).

Defendants are regulated by the Oregon Insurance Code under ORS § 750.005–.340, the provisions which cover health care contractors. These sections make applicable to defendants many of the regulations to which the business of insurance generally is subject. Section 743.006 requires insurers to submit their policy forms to the Insurance Commissioner for approval. Section 743.009 requires the Insurance Commissioner to disapprove the policies if they do not comply with law, are prejudicial to the insurer's policy holders, or are unjust, unfair, or inequitable. Subsection 746.160(3) for-bids insurance companies from "doing anything which is detrimental to free competition in the business or injurious to the insuring public."

This regulatory scheme satisfies the second requirement of the McCarran-Ferguson Act. *Dexter v. Life Assurance Society of the United States*, 527 F.2d 233 (2d Cir. 1975); *Transnational Insurance Co. v. Rosenlund*, 261 F.Supp. 12, 25–26 (D.Or. 1966).

■ Plaintiffs contend that the McCarran-Ferguson Act does not apply because the Oregon Insurance Code does not specifically regulate the practice of podiatry, or the particular practices in issue here. If the state regulates the business of insurance, and the practices challenged are part of the business of insurance, the failure of the state to react to a particular practice does not affect the application of the McCarran-Ferguson Act. *Addrisi v. Equitable Life Assurance Society of the United States*, 503 F.2d 725 (9th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975).

**C.  Boycott**

Plaintiffs contend that even if the defendants meet the first two requirements of the McCarran-Ferguson Act, they lose the exemption because they are engaged in an illegal boycott. 15 U.S.C. § 1013(b).

■ To qualify for the boycott provision of the McCarran-Ferguson Act, defendant must have engaged in concerted activity which forecloses competition anywhere in the relevant market. *St. Paul Fire and Marine Insurance Co. v. Barry*, 438 U.S. 531, 553, 98 S.Ct. 2923, 2935, 57 L.Ed.2d 932 (1978). In *Barry*, plaintiffs were required to carry medical malpractice insurance, and all access to that insurance was controlled by the defendants.

■ The facts here do not amount to a boycott. Defendants do not control the health insurance market. There are other health insurers, not defendants in this case, which provide coverage for podiatric serv-

ices. In addition, insureds under defendants' policies are free to obtain podiatric care without restriction, if they are willing to pay for those services.

Under all the facts, I find there is no boycott. In addition, plaintiffs have failed to present any evidence of concerted action. There is no merit in plaintiff's boycott contention.

I therefore hold that defendants are exempt from anti-trust liability under the McCarran-Ferguson Act. Defendants' motion for summary judgment is therefore granted.

Because of the likelihood that plaintiffs will appeal, I will discuss the other grounds on which defendants base their motion for summary judgment.

## II.  *STATE ACTION IMMUNITY*

Defendants contend that they are entitled to antitrust immunity under the state action doctrine.

■ Immunity from the antitrust laws is available when the anticompetitive activity is "clearly articulated and affirmatively expressed as a state policy," and when that policy is actively supervised by the state itself. *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

■ Defendants contend that a "clearly articulated state policy" supporting their treatment of podiatrists exists because the Oregon Legislature has refused to pass equality legislation for podiatrists, but has passed such legislation for others in the health care fields.[7]

The failure to enact proposed equality legislation is not alone enough to demonstrate a clear state policy favoring the inequality. As the Oregon Supreme Court stated in *Berry v. Branner,* 245 Or. 307, 421 P.2d 996 (1966), where the court was asked to read the legislature's failure to amend a statute as a signal of legislative approval: "Legislative inaction is a weak reed upon which to lean in determining legislative intent." *Id.* at 311, 421 P.2d 996.

To be entitled to state action immunity, the state's anticompetitive policy must be affirmative, not passive or inferential. *Cantor v. Detroit Edison Co.,* 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976). Defendants have not demonstrated a clearly articulated state policy supporting their treatment of podiatrists.

■ Defendants also contend that the National Health Planning and Resources Development Act of 1974, 42 U.S.C. § 300k *et seq.,* articulates a national policy of discouraging competition in the health insurance field, and that because this policy conflicts with the antitrust laws, defendants should not be subject to the antitrust laws under the implied governmental immunity doctrine.

Defendants have not shown that the Act requires of them conduct which conflicts with the federal antitrust laws. Without this conflict, the implied immunity doctrine is inapplicable. *See National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City,* 628 F.2d 1050 (8th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 938, 67 L.Ed.2d 108 (1981).

I therefore hold that defendants are not entitled to summary judgment based on the state action immunity or under the implied governmental immunity doctrine.

## III.  *INTERSTATE COMMERCE*

Defendants contend[8] that there is insufficient interstate commerce to support federal jurisdiction. They assert that their provision of insurance coverage, and plaintiff's podiatric practices, are not in interstate commerce, but are wholly local in character.

---

7.  *See:* Or.Rev.Stat. §§ 743.052 (dentists); 743.123 (psychologists); 743.128 (nurse practitioners); 743.132 (denturists); 750.065 (optometrists).

8.  This part of the motion for summary judgment is made only by defendants Greater Oregon Health Service, Inc.; Rogue Valley Physicians' Service; and Physicians' Association of Clackamas County.

Plaintiffs contend that their

(1) out of state purchases of medical supplies and equipment;

(2) treatment of patients who cross state lines;

(3) receipt of payments from out of state insurers; and

(4) participation in the federal medicare program, are adversely affected by defendants' conduct.

■ To satisfy the "affecting commerce" test for antitrust jurisdiction, plaintiffs must show that defendants' business activities, "as a matter of practical economics," has "a not insubstantial effect on the interstate commerce involved." *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). There is no specific quantity associated with the "not insubstantial effect" test. Each case turns on its own facts.

In *McLain, supra,* the Court found a "substantial effect" because fixed price brokerage fees, although local in character, would stimulate or retard the volume of real estate sales in the New Orleans area, and would consequently affect the "appreciable" volume of out of state financing for those sales. 444 U.S. at 245, 100 S.Ct. at 510. And in *Rex Hospital, supra,* the plaintiff hospital alleged that its out of state purchases would decrease by "perhaps hundreds of thousands of dollars," and a multimillion dollar financing deal would not take place. 425 U.S. at 744, 96 S.Ct. at 1852.

■ Plaintiffs assert that their activities involved interstate commerce. But the amount of interstate commerce each plaintiff has alleged is insubstantial. Even if plaintiffs purchased all of their supplies and equipment out of state, the amount is inconsequential compared to their gross income. Fewer than two percent of their patients travel across state lines. And the largest sum any one of the plaintiffs received from an out of state insurance company is less than ½ of 1% of that plaintiff's gross income.

When compared to the volume of interstate commerce that would be affected by the business activities in *McLain* and *Rex Hospital,* plaintiffs' alleged interstate commerce is insubstantial. *See Thornhill Publishing Co., Inc. v. General Telephone and Electronics Corp.,* 594 F.2d 730 (9th Cir. 1979). Because plaintiffs' interstate activities are so insubstantial, defendants' business activities could not "as a matter of practical economics," substantially affect them, *McLain, supra,* at 246, 100 S.Ct. at 512.

I hold that plaintiffs have failed to meet the interstate commerce jurisdictional requirements of the Sherman Act, and that the defendants are entitled to summary judgment on this ground.

## IV. EXCLUSIVE JURISDICTION

■ Defendants contend that the Oregon Insurance Commissioner has exclusive jurisdiction over plaintiff's claims because the claims involve the business of insurance, an area in which Congress has given regulatory authority to the states.

This contention depends on whether the McCarran-Ferguson Act or the state action doctrine is applicable. I have held that defendants' alleged antitrust violations are covered by the McCarran-Ferguson Act. Therefore, the Oregon Insurance Commissioner has exclusive jurisdiction over plaintiffs' claims, and plaintiffs may follow the procedure set out in the Oregon Insurance Code for bringing complaints about the fairness of defendants' insurance practices.

## CONCLUSION

Defendants' motion for summary judgment is granted.