Argued and submitted March 6, decision of Court of Appeals reversed; judgment
of circuit court reversed, and case remanded to circuit court for further
proceedings June 28, 2007

Kathryn R. BAKER,
*Petitioner on Review,*

*v.*

CITY OF LAKESIDE,
*Respondent on Review.*

(CC 04CV0381; CA A128181; SC S53925)

164 P3d 259

Robert K. Udziela, Beaverton, argued the cause and filed the briefs for petitioner on review.

Gerald L. Warren, Salem, argued the cause and filed the brief for respondent on review.

David B. Thompson, Assistant Attorney General, Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Before Gillette, Presiding Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

KISTLER, J.

Durham, J., concurred and filed an opinion, in which Gillette, P. J., joined.

---

** De Muniz, C. J., did not participate in the decision of this case.

**KISTLER, J.**

Oregon has provided since statehood that a plaintiff will commence an action on the date that he or she files the complaint as long as the plaintiff also serves the summons on the defendant within 60 days. *See* ORS 12.020(2) (stating that rule); General Laws of Oregon, Civ Code, ch I, title II, § 15, p 142-43 (Deady 1845-64) (same). The question that this case presents is whether, in amending the Oregon Tort Claims Act (OTCA) in 1981, the legislature intended to exempt OTCA claims from that longstanding rule. The trial court held that it did and dismissed plaintiff's complaint because, without the benefit of that rule, plaintiff had failed to commence her action against the City of Lakeside (city) within the applicable two-year statute of limitations. Following its precedent, the Court of Appeals affirmed. *Baker v. City of Lakeside*, 206 Or App 718, 138 P3d 894 (2006). We allowed plaintiff's petition for review and now reverse the Court of Appeals decision and the trial court's judgment.

A city employee injured plaintiff in an automobile accident on August 31, 2002. On August 27, 2004, plaintiff filed a complaint under the OTCA against the city for injuries that she sustained in that accident, but she did not serve the summons on the city until four weeks later. Under the applicable statute of limitations, plaintiff had two years after the accident in which to commence her action against the city. Ordinarily, a plaintiff commences an action against a defendant only after he or she both files the complaint and serves the summons on the defendant. ORS 12.020(1).[1] As noted, Oregon has recognized an exception to that rule since statehood. Under ORS 12.020(2), an action "shall be deemed to have been commenced" on the date that the plaintiff filed the complaint if the plaintiff also serves the summons on the defendant within 60 days.[2]

---

[1] ORS 12.020(1) provides:

"Except as provided in subsection (2) of this section, for the purpose of determining whether an action has been commenced within the time limited, an action shall be deemed commenced as to each defendant, when the complaint is filed, and the summons served on the defendant, or on a codefendant who is a joint contractor, or otherwise united in interest with the defendant."

[2] ORS 12.020(2) provides:

■     If ORS 12.020(2) applies to OTCA claims, plaintiff's action is timely. She filed her complaint on August 27, 2004, within the two-year statute of limitations, and served the city within 60 days of filing her complaint. Conversely, if ORS 12.020(2) does not apply, then her action may not be timely because she did not serve the summons on the city until the two-year statute of limitations had elapsed. The city·contends that, in amending ORS 30.275 in 1981, the legislature intended to exempt OTCA claims from ORS 12.020. That conclusion follows, the city reasons, from the plain wording of ORS 30.275(9). The Court of Appeals twice has interpreted ORS 30.275(9) that way. *See O'Brien v. State of Oregon*, 104 Or App 1, 5, 799 P2d 171 (1990), *rev dismissed*, 312 Or 672, 675 P2d 633 (1992) (so interpreting ORS 30.275(9)); *Lawson v. Coos Co. Sch. Dist. #13*, 94 Or App 387, 390, 765 P2d 829 (1988) (same). The trial court followed those decisions in ruling in the city's favor, and the Court of Appeals affirmed the trial court's judgment on the strength of its earlier decisions. We allowed plaintiff's petition for review to consider this recurring issue.

The parties' dispute in this case turns on the meaning of a clause in ORS 30.275(9). We begin by setting out the text of that subsection and then turn to the meaning of the disputed clause. ORS 30.275(9) provides:

> "Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

The parties interpret the clause "notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action" differently.

---

"If the first publication of summons or other service of summons in an action occurs before the expiration of 60 days after the date on which the complaint in the action was filed, the action against each person of whom the court by such service has acquired jurisdiction shall be deemed to have been commenced upon the date on which the complaint in the action was filed."

The city contends that the participial phrase "providing a limitation on the commencement of an action" modifies only the phrase "other statute"; it does not modify the phrase "notwithstanding any other provision of ORS chapter 12." If the city's interpretation is correct, then the latter phrase would exclude all the provisions of ORS chapter 12 (except for ORS 12.120 and ORS 12.135) in determining whether a plaintiff's OTCA claim was timely. More to the point, the phrase "notwithstanding any other provision of ORS chapter 12" would preclude plaintiff from relying on ORS 12.020(2) in this case.

Plaintiff interprets the notwithstanding clause differently. She reasons that the participial phrase "providing a limitation on the commencement of an action" modifies both "any other provision of ORS chapter 12" and "other statute." Under that interpretation, the phrase "notwithstanding any other provision of ORS chapter 12" refers to only those provisions of ORS chapter 12 that provide a limitation on the commencement of an action. Because ORS 12.020 does not provide a limitation on the commencement of an action, the phrase would not preclude a plaintiff from relying on ORS 12.020(2), and plaintiff's action in this case would be timely.

Grammatically, both interpretations are permissible. The city argues, however, that two interpretative rules favor its interpretation over plaintiff's. First, the city contends that, if the participial phrase "providing a limitation on the commencement of an action" modifies the phrase "any other provision of ORS chapter 12," as plaintiff argues, then that phrase becomes a subset of the phrase "other statute providing a limitation on the commencement of an action." The city reasons that, to avoid that redundancy, we should hold that the participial phrase "providing a limitation on the commencement of an action" modifies only the phrase "other statute" and that the phrase "any other provision of ORS chapter 12" includes provisions other than statutes of limitations.

The city misperceives the effect of the plaintiff's interpretation. The notwithstanding clause, as plaintiff interprets it, applies to two related but separate classes of statutes. It applies (1) to any provision of ORS chapter 12

that provides a limitation on the commencement of an action and (2) to any *other* statute providing a limitation on the commencement of an action." (Emphasis added.) The first class is not a subset of the second, as the legislature's use of the word "other" makes clear. Under plaintiff's interpretation, the first class applies to limitations provisions found in ORS chapter 12, and the second class applies to *other* limitations provisions found elsewhere in the Oregon Revised Statutes. To be sure, the legislature could have achieved the same result with a single phrase, but plaintiff's interpretation does not result in a redundancy.

■　　The city also relies on the rule of the last antecedent. In *State v. Webb*, 324 Or 380, 927 P2d 79 (1996), the court explained that rule as follows:

> " 'Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." ' "

*Id.* at 386 (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33, 270 (5th ed 1992)). The city reasons that, under that rule, the participial phrase "providing a limitation on the commencement of an action" refers solely to the phrase—"other statute"—that immediately precedes it. However, as the court observed in *Webb*, the last antecedent rule applies only "where no contrary intention appears." In our view, a contrary intention appears from the remainder of the subsection of which the disputed clause is a part.

We note that both the phrase that precedes the notwithstanding clause and the independent clause that follows it address the time for commencing an action. The subsection begins by excepting three specific statutes that provide a limitation period for commencing an action, and it ends with an independent clause that states the general limitations period for a tort action against a public body; that is, the subsection states that, except for three specific statutory limitation periods, the limitation period for commencing a tort action against a public body is two years. The notwithstanding

clause falls between the opening exception and the independent clause.

Given that context, we are hesitant to conclude that, in a subsection otherwise devoted exclusively to stating the limitations period for tort claims against public bodies, the legislature intended that the notwithstanding clause would address a completely different issue—when an action will be commenced—and, in doing so, depart from a procedural rule that had been an accepted part of Oregon practice for more than 100 years. *See State v. Johnson*, 339 Or 69, 93-94, 116 P3d 879 (2005) (looking to historical practice in holding last antecedent rule inapplicable). Put differently, because the remainder of the subsection is at odds with the city's reliance on the last antecedent rule, we do not think that the city may rely on that rule to say that its interpretation of the notwithstanding clause is the only permissible one. *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004) (providing that courts should consider entire text in determining statute's meaning rather than focus on only part of the text).

■    A different interpretative rule favors plaintiff's interpretation. ORS 30.275(9) begins with a series. The opening phrase states: "Except as provided in [three specific statutory limitations periods], but notwithstanding any other provision of ORS chapter 12." The phrase "any other provision of ORS chapter 12" is the fourth term in a series joined by the conjunction "but." We ordinarily assume that a nonspecific term in a series, such as "any other provision," shares the same qualities as the specific terms that precede it. *See Liberty v. State Dept. of Transportation*, 342 Or 11, 20, 148 P3d 909 (2006) (describing *ejusdem generis* rule). That interpretative rule points towards saying, as plaintiff would, that the participial phrase "providing a limitation on the commencement of an action" modifies "any other provision of ORS chapter 12," as well as "other statute." Not only would that interpretation make the phrase "any other provision of ORS chapter 12" consistent with the remainder of the other items in the series, but it also would give effect to the legislature's use of the word "other" in the phrase "any *other* provision"—*i.e.*, other than the three limitations provisions that precede the quoted phrase.

We note also that the context supports plaintiff's interpretation. ORS chapter 12 consists primarily of sections providing the limitations periods for commencing various kinds of actions. *See, e.g.*, ORS 12.050 (limitations period for actions to recover real property); ORS 12.060 (limitations period for actions on land sale contracts); ORS 12.070 (limitations period for actions on judgments). However, that chapter also includes other provisions. As noted, ORS 12.020 sets out the rules for determining when an action will be commenced—rules that have been in place since statehood. Another provision, ORS 12.160 tolls the time in which persons under 18 years of age and persons who are "insane" are required to bring an action. It is possible that, as the city argues, in amending ORS 30.275 in 1981, the legislature intended to preclude plaintiffs bringing OTCA claims from relying on the longstanding rule of procedure set out in ORS 12.020. It is also possible that the legislature may have intended to deny children and persons with mental disabilities bringing OTCA claims the benefit of a tolling rule that those plaintiffs would enjoy in any other action. But we are hesitant to attribute that intent to the legislature when it has not said so explicitly. *See State v. Miller*, 309 Or 362, 368, 788 P2d 974 (1990) (declining to infer that legislature departed from well-established procedures).

Considering the text and context of ORS 30.275(9), we conclude that they favor plaintiff's interpretation. We cannot completely discount the city's interpretation of that subsection, however. Because there are two plausible interpretations, we look to the legislative history to determine the legislature's intent. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (explaining when courts may look to legislative history).

Before 1981, ORS 30.275(1) (1979) required every person who had a tort claim against a public body to give written notice to the public body within 180 days of the loss or injury. That subsection also required that "[n]otice of claim shall be served upon the Attorney General or local public body's representative for service of process either personally or by certified mail, return receipt requested." ORS 30.275(1) (1979). Finally, the subsection required strict adherence to its terms. *Id.* (providing that "[a] notice of claim * * * which is

presented in any other manner than provided in this sectio[n] is invalid").

As a result of those requirements, courts had dismissed OTCA claims against public bodies when the plaintiff sent timely notice by first-class rather than certified mail. *See* Minutes, Senate Committee on Justice, Senate Bill (SB) 86, Feb 10, 1981, 8 (testimony of Jeffrey K. McCollum). Similarly, public bodies had denied claims for failure to comply with the notice provisions even when they had ample actual notice. *See* Testimony, Senate Committee on Justice, SB 86, Jan 20, 1981, Ex A (statement of Dan O'Leary). In one case, for instance, an injured person had given the insurance adjuster for a public body notice of an accident within days after it had occurred. *Id.* The injured person had filled out and returned a questionnaire regarding the accident and also had given the insurance company information from the person's doctor. *Id.* Although the injured person had had numerous conversations with the adjuster during the 180-day period, the insurance company denied the claim after the 180-day period had passed because the injured person had not complied with the strict notice requirements of ORS 30.275 (1979). *Id.*

To cure that problem, the Oregon State Bar sponsored a bill that would have repealed ORS 30.275 (1979) in its entirety. Bill File, Senate Committee on Justice, SB 86, Dec 11, 1980, draft bill. As initially drafted, not only would SB 86 have repealed the requirement to give tort claim notice found in subsection (1) of ORS 30.275 (1979), but it also would have repealed the two-year statute of limitations for OTCA claims found in subsection (3) of ORS 30.275 (1979). Over the next several months, the proponents and opponents of the bill discussed two issues. First, they debated whether the 180-day tort claim notice served a valid public purpose and, if it did, whether permitting actual notice would avoid the problems that had prompted SB 86. Second, they observed that repealing the two-year statute of limitations in ORS 30.275(3) (1979) would result in multiple statutes of limitation applying to OTCA claims. For instance, one witness explained that, although many OTCA claims against public bodies still would be subject to the general two-year statute of limitations for negligence claims, more than half of

the OTCA claims against public bodies arose out of property damage and would be subject to a six-year statute of limitations. *See* Minutes, Senate Committee on Justice, SB 86, Jan 20, 1981, 19 (testimony of Bill Blair).

The majority of the debate in the Senate committee focused on the need (or lack of it) for the 180-day tort claim notice. There was little disagreement that SB 86, as initially drafted, went too far in eliminating the two-year statute of limitations for OTCA claims and thus exposing public bodies to different statutes of limitations. On March 25, 1981, Senator Kulongoski moved in a work session to send SB 86, as initially drafted, to the floor with a "do pass" recommendation. Minutes, Senate Committee on Justice, SB 86, Mar 25, 1981, 3-4. Senator Wyers said that, if the committee "decided to conceptually adopt th[at] motion, there would still be one remaining question as to whether an additional reference [should] be added to make it very clear to everyone that the two-year statute of limitations in Chapter 30 would still apply." *Id.* at 4. Senators Fadeley and Kulongoski then engaged in the following colloquy:

"Senator Fadeley said that the bill [SB 86] apparently tries to make a six-year statute applicable for property damage and a three-year statute applicable for wrongful death actions of at least one sort by a personal representative.

"Senator Fadeley said that as he understood the motion it was not asking for the six-year statute and the three-year statute on wrongful death was not being asked for.

"Senator Kulongoski said that was correct.

"Senator Fadeley asked whether [Senator Kulongoski] was intending that the existing two-year statute on personal injury apply and that the two-year general statute for tort claims act still apply.

"Senator Kulongoski replied that was correct."

*Id.* (some capitalization omitted).[3]

The committee held another hearing on the bill on April 8, 1981. At that hearing, Senator Fadeley again

---

[3] The committee did not vote on Senator Kulongoski's motion to send the bill to the floor with a "do pass" recommendation, perhaps because of the issue that Senator Wyers had noted.

expressed his concern that SB 86, as initially proposed, would result in a six-year statute of limitations for property damage claims against public bodies and a three-year statute of limitations in wrongful death actions. Minutes, Senate Committee on Justice, SB 86, Apr 8, 1981, 2. Legislative counsel explained that she had drafted an amendment to the bill. *Id.* Her amendment, if accepted, would delete subsection (1) of ORS 30.275 (1979), which required tort claim notice, but would retain subsection (3), as amended, which provided a two-year statute of limitations for OTCA claims. Senate Committee on Justice, SB 86, Apr 8, 1981, Ex B. Senator Gardner "clarified that the effect [of the amendment] would be for all claims under the tort claims act, there would be a two-year statute of limitations and no special notice requirements." Minutes, Senate Committee on Justice, SB 86, Apr 8, 1981, 2. The committee voted to adopt the amendment and to send SB 86, as amended, to the floor with a "do pass" recommendation.[4] *Id.* at 3-4.

On April 16, 1981, Senator Gardner moved on the Senate floor to refer SB 86 back to the Committee on Justice. *See* Tape Recording, Senate, SB 86, Apr 16, 1981, Tape 50, Side B. The ensuing debate focused entirely on the committee's decision to eliminate tort claim notice. The senators who favored retaining tort claim notice recognized the problems that the strict service requirements had generated but thought that permitting actual notice would alleviate those problems. *See id.* (remarks of Senators Smith, Gardner, *et al.*). They also reasoned that timely tort claim notice permitted public bodies to respond quickly to correct improper practices or dangerous conditions. *See id.* After extensive discussion, the Senate voted to refer the bill back to the committee. *See id.*

---

[4] As amended, SB 86 provided, in part:

"An action to recover damages from a public body or from an officer, employe[e] or agent of a public body acting within the scope of employment or duties for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the date of the accident or occurrence out of which the claim for damages arose."

Bill File, Senate Committee on Justice, SB 86, Apr 14, 1981, A-Engrossed Senate Bill 86 (emphasis and bracketed material omitted).

On April 30, 1981, the Senate Committee on Justice held another hearing on the bill. At that hearing, a witness testifying on behalf of the City of Salem offered a proposed amendment to SB 86 that reflected a compromise "made and agreed upon by most of the proponents of SB 86." Minutes, Senate Committee on Justice, SB 86, Apr 30, 1981, 5 (testimony of Bill Blair). In addition to requiring tort claim notice and providing that timely actual notice to the public body would be sufficient, the proposed amendment provided:

> "Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS Chapter 12 or other statute providing a limitation on the commencement of an action, any action for damages within the scope of ORS 30.260 to 30.300 shall be commenced within two years from the alleged injury."

Senate Committee on Justice, SB 86, Apr 30, 1981, Ex G. The witness did not provide any explanation for the changes, and the committee voted to adopt the proposed amendment without further discussion.[5] Minutes, Senate Committee on Justice, SB 86, Apr 30, 1981, 5-6. The committee sent the amended bill to the full Senate, which approved it, as did the House.

The legislative history does not contain a specific explanation why the drafters of the April 30, 1981, amendment added the phrase, "Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action," to the two-year statute of limitations for OTCA claims. We draw, however, three conclusions regarding the legislature's intent both from the discussions leading up to the adoption of that wording and also from the specific changes in wording that the legislature made.

First, in all the committee hearings on SB 86, the legislators and the witnesses focused exclusively on two issues—tort claim notice and the need to preserve the two-year statute of limitations for OTCA claims. What is now ORS 30.275(9) preserves the two-year statute of limitations

---

[5] Legislative counsel later made minor wording changes to the proposed amendment that are not relevant to the issue presented here.

for OTCA claims, and the legislative history that led up to its adoption provides no reason to think that that subsection—including the notwithstanding clause—addresses any subject other than limitations periods.

Second, the A-Engrossed version of SB 86 provided that "[a]n action to recover damages from a public body * * * shall be commenced within two years after the date of the accident or occurrence out of which the claim for damages arose." When the Senate committee amended that part of SB 86 on April 30, 1981, it excepted two limitations periods (ORS 12.120 and ORS 12.135), which no one previously had discussed, from the general two-year statute of limitations, and it qualified those exceptions by adding the notwithstanding clause. Stating the exceptions and then qualifying them with the notwithstanding clause implies that the drafters of the April 30 amendment added the notwithstanding clause solely to clarify that no other exception to the general two-year statute of limitations existed.

Finally, we note that the notwithstanding clause tracks the concern that Senator Fadeley had expressed throughout the discussion of SB 86. Senator Fadeley repeatedly had stated that two statutes of limitation should not apply to OTCA claims: the six-year statute of limitations for property damage and the three-year statute of limitations for wrongful death. The notwithstanding clause mirrors that concern. The reference to "any other provision of ORS chapter 12" includes the six-year statute of limitations for property damage, found in ORS 12.080 (1979), and the reference to any "other statute" providing a limitation on the commencement of an action includes the three-year statute of limitations for wrongful death actions, found in ORS 30.020 (1979).

Nothing in the legislative history suggests that the legislature intended to depart from the longstanding rule of procedure found in ORS 12.020(2), nor does it suggest that the legislature intended to deny children and persons with mental disabilities bringing OTCA claims the advantage of a tolling provision that is available to them in every other action. Rather, the legislative history confirms that, in amending what is now ORS 30.275(9), the legislature focused

solely on the question of statutes of limitations. The history thus confirms that the phrase "providing a limitation on the commencement of an action" applies both to "any other provision of ORS chapter 12" and "other statute."[6]

■      Considering the text, context, and legislative history of ORS 30.275(9), we hold that the notwithstanding clause in ORS 30.275(9) applies only to those provisions of ORS chapter 12 and other statutes that provide a limitation on the commencement of an action. The notwithstanding clause does not bar application of ORS 12.020 to OTCA claims. Because plaintiff filed her complaint within two years of the accident and served the city within 60 days of filing her complaint, her complaint was timely under ORS 12.020(2). The city's motion for summary judgment should have been denied.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** concurring.

The majority correctly concludes, after interpreting ORS 30.275(9), that, in an action under the Oregon Tort Claims Act, ORS 30.260 to 30.300, a plaintiff commences an action within the time allowed by law if the plaintiff complies with the 60-day service rule stated in ORS 12.020(2). I write separately to draw attention to certain aspects of the majority's analysis that are not supportable.

The statute in question, ORS 30.275(9), provides:

"Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent

---

[6] We note that this is not a case in which we are attempting to infer intent from legislative inaction. *See Berry v. Branner,* 245 Or 307, 311, 421 P2d 996 (1966) (explaining the difficulty in inferring legislative intent from inaction). Nor is it a case in which the legislature was silent regarding the subsection at issue here. Rather, the committee and the witnesses explained at length that this subsection would specify the applicable limitations period for OTCA actions. We rely on that explanation in inferring that the wording adopted on April 30, 1981, addresses only periods of limitation.

of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

The majority properly begins with the text of that statute, especially the clause: "notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action[.]" In response to the city's arguments, the majority first correctly rejects the claim that plaintiff's reading of the statute results in redundancy. Second, the majority correctly concludes that the rule of the last antecedent, on which the city relies, has application only "where no contrary intention appears." 343 Or at 75. As the majority correctly opines, a "contrary intention appears" from the balance of ORS 30.275(9). The majority points out that the city's "last antecedent" argument contradicts an important judicial rule—*ejusdem generis*—for interpreting statutory text and also contradicts the clear contextual purpose of ORS 30.275(9), *i.e.*, the specification of the limitations period applicable to Oregon Tort Claims Act actions.

For me, the majority's analysis of text and context demonstrates the legislature's intent without serious contradiction. Certainly the city's arguments, as listed by the majority, would nullify the application of significant contextual statutes regarding litigation by children and persons with mental disabilities with no evidence in ORS 30.275(9) or any other statute that the legislature intended that result.

So far, so good. But it is at that point in its discussion that the majority commits an analytical error: without explanation, it labels the city's proposed statutory interpretation as "[g]rammatically * * * permissible." 343 Or at 74. As a consequence of that label, the majority concludes that ORS 30.275(9) is ambiguous, requiring the court to explore legislative history.

The majority's conclusion, in my view, is not correct. This court does not examine statutory grammar in isolation. Rather, we must determine legislative intent by considering initially the entirety of statutory text and context. As noted, a proper examination of those aspects of ORS 30.275(9), and not only its grammar, demonstrates that the city's proffered

statutory interpretation is not reasonable, *i.e.*, is *not*, in context, "grammatically * * * permissible."

The majority nonetheless embarks on a discussion of legislative history. Stated more precisely, the majority embarks on a discussion of *other aspects* of the legislative history of ORS 30.275(9), such as whether a two-year period of limitations should apply and whether the statute should require the delivery of a tort claim notice. Notably, the majority acknowledges that it has discovered no explanation, by any legislator or anyone else, regarding the meaning of the introductory clauses of ORS 30.275(9). Nevertheless, the majority transforms that silence in the legislative record into affirmative evidence of the legislature's intent that removes all reasonable doubt about what the legislature meant to accomplish.

I cannot join in that reasoning. Legislative silence about the intent underlying a legislative proposal is just that: silence. Legislative silence regarding the "notwithstanding" clause in ORS 30.275(9) confirms nothing about the legislature's intent in enacting that clause. Consequently, the silence in the legislative history regarding that clause cannot illuminate, much less clarify or remove, an ambiguity that supposedly arises from its text and context.

As noted, I conclude that ORS 30.275(9) is not ambiguous, and I draw that conclusion from an examination of statutory text and context. I would not resort to legislative history because no statutory ambiguity justifies that step.

For the reasons stated above, I concur in the majority's disposition of this case. Gillette, P. J., joins in this concurring opinion.