BALDWIN, J.,
dissenting.
I am unable to join in the majority’s opinion, because the majority has adopted an unreasonable construction of ORS 30.075(1) and ORS 30.275(9). Moreover, the majority opinion is inconsistent with our recent holding in Baker v. *549 City of Lakeside, 343 Or 70, 164 P3d 259 (2007). In my view, plaintiffs personal representative timely filed this injury action under ORS 30.075(1), and the action was not subject to the time limitation established by ORS 30.275(9).
A. The text, context, and legislative history disclose that ORS 30.075(1) is not subject to the time provisions of ORS 30.275(9).
Plaintiff, as a passenger on a bus operated by defendant, a public body, allegedly sustained personal injuries caused by defendant’s negligence. Plaintiff later died from unrelated causes, and his personal representative timely filed a negligence action for damages within the time allowed to commence a survival action under ORS 30.075(1). That statute provides:
“Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within the limitations established in ORS 12.110 by the injured person and continued by the personal representatives under this section, or within three years by the personal representatives if not commenced prior to death.”
ORS 30.075(1) (emphases added).
The legislature enacted ORS 30.075(1) in 1965. Or Laws 1965, ch 620, § 4. By its express terms, ORS 30.075(1) provides that an action arising out of injuries to a person “shall not abate upon the death of the injured person,” and further provides that the action may be commenced “within three years by the personal representative, if not commenced prior to death.” Thus, the plain language of this survival statute allowed plaintiff’s personal representative to commence this action because plaintiff did not commence an action for his injuries prior to his death.
*550 In 1981, making no specific reference to that earlier enacted survival statute, the legislature amended the Oregon Tort Claims Act (OTCA) and added what is now ORS 30.275(9). Or Laws 1981, ch 350, § 1. That statute now provides:
“Except as provided in ORS 12.120, 12.135 and 659A.875, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury.”
ORS 30.275(9) (emphasis added).
In this case, the ambiguity requiring analysis arises from the legislature including a time element for the commencement of an action by a personal representative when it extended injury actions beyond the death of an injured party. ORS 30.075(1) allows a personal representative to commence an action “within three years *** if not commenced prior to [the] death [of the injured person].” Based on that language in the context of a survival statute, the majority has erroneously characterized ORS 30.075(1) as a “statute providing a limitation on the commencement of an action” within the meaning of ORS 30.0275(9).
I agree with the majority that we resolve any ambiguity involving the interplay between statutes under the principles set out in State v. Gaines, 346 Or 160, 206 P3d 1042 (2009). However, I emphasize that Gaines (and the PGE methodology it modified) was developed and adopted
“[to] best serve the paramount goal of discerning the legislature’s intent. In that regard, as this court and other authorities long have observed, there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes. Only the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law. The formal requirements of lawmaking produce the best source from which to discern the legislature’s intent, for it is not the *551 intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]”
Id. at 171 (internal citations and quotation marks omitted).
The “paramount goal” of discerning legislative intent reflects a judicial understanding that legislative enactments must be enforced appropriately under our form of government. The legislature has set out the general rule for construction of statutes by the judicial branch as follows:
“In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.”
ORS 174.010.
Here, examination of the text of the statutes under consideration is fairly straightforward. Included in the critical text of ORS 30.075(1) are the words “shall not abate upon the death of the injured person.” The meaning of the phrase “shall not abate” is unambiguous. In a legal context, the word “abate” means “a: to bring entirely down : DEMOLISH : put an end to : do away with <~ a nuisance> <~ an action> b: nullify : make void <~ a writ>.” Webster’s Third New Int’l Dictionary 2 (unabridged ed 2002) (boldface omitted). Similarly, Black’s Law Dictionary defines “abatement,” in part, as “[t]he act of eliminating or nullifying.” Black’s Law Dictionary 3 (9th ed 2009). In Mendez v. Walker, 272 Or 602, 603 n 1, 538 P2d 939 (1975), we indicated that the abatement of an injury action upon the death of a party means “the action is utterly dead.”
We must also examine the last full sentence of ORS 30.075(1), which expands the time allowed for commencing a survival action. If an “injured person” commences an action within two years, it may be “continued by the personal representative under this section.” If not commenced “prior to [the injured person’s] death,” the action may be commenced “within three years by the personal representative.” That enactment is based on the legislature’s determination that such an action will survive for an additional period of time *552 beyond the death of the injured person. In enacting ORS 30.075(1), the legislature has expressed an intention that a personal representative may have up to an additional year beyond the two-year limitation established by ORS 12.110 to commence an action under certain circumstances. Neither the majority or defendant has identified an ambiguity in the text of ORS 30.075(1).
In sum, ORS 30.075(1) plainly extends the life of an injury action beyond the death of an injured person as set forth in the statute. The statute establishes a procedure whereby a personal representative may commence an action if the injured person dies before the two-year time limit established by ORS 12.110. If an injured person dies after the two-year period has elapsed, a personal representative is allowed up to an additional year to commence that action. By its terms, the purpose and function of this survival statute is to extend the life of any injury action — not restrict it. As a matter of procedure, the statute allows additional time for a personal representative to commence an action. I employ the legal meaning of the word “procedure,” which is defined as “1. A specific method or course of action. 2. The judicial rule or manner for carrying on a civil lawsuit or criminal prosecution.” Black’s at 1323 (boldface omitted). Obviously, without the insertion of a time element in the statute, the life of a survival action would be of unlimited duration. The insertion of a time element and a specific method for carrying on the survival action does not make the survival statute a statute of limitation. As will be explained, to conclude otherwise exalts form over substance and misapprehends the nature of ORS 30.075(1) as a survival statute.
An examination of the legislative history relating to ORS 30.075(1) confirms that the legislative purpose in enacting this survival statute was to give additional life to injury actions under the circumstances set forth in the statute. Prior to the 1965 enactment of ORS 30.075(1), the longstanding rule in Oregon, which was embodied in ORS 121.010 (1963), provided that -a “cause of action arising out of an injury to the person dies with the person.” That prohibition was subject to a few exceptions for wrongful death actions, actions related to the injury of a child, and actions that achieved a verdict before the party’s death, but *553 otherwise operated to preclude any representative from continuing or bringing a personal injury cause of action on behalf of a deceased person. By enacting ORS 30.075(1), the legislature repealed the prohibition contained in ORS 121.010. See Or Laws 1965, ch 620, § 1. In discussing the provisions contained in the 1965 bill, Representative Harlan noted that “all causes of action survive in Oregon except a cause of action for personal injury. This bill *** would correct that in line with the laws of some 47 states.” Tape Recording, Senate Judiciary Committee, HB 1517, Apr 26, 1965, Tape 3, Side 2 (statement of Rep Harlan); see also Minutes, House Judiciary Committee, Mar 30, 1965, 2 (noting that the bill was designed to allow the survival of a cause of action after death).
I next turn to the text of ORS 30.275(9) to determine whether it relates to ORS 30.075(1). ORS 30.275(9) requires that an action against a public body within the scope of the OTCA shall be commenced within two years after the alleged loss or injury, “notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action.” The critical text here is “statute providing a limitation on the commencement of an action.” If ORS 30.075(1) is not a “statute providing a limitation” within the meaning of ORS 30.275(9), the two-year time limitation of ORS 30.275(9) does not apply. The word “limitation” generally means “a restriction or restraint imposed from without (as by law, custom, or circumstances)” and, more specifically, “a time assigned for something; specif : a certain period limited by statute after which actions, suits, or prosecutions cannot be brought in the courts.” Webster’s at 1312. Similarly, Black’s Law Dictionary defines “limitation” as “1. The act of limiting; the state of being limited. 2. A restriction. 3. A statutory period after which a lawsuit or prosecution cannot be brought in court.” Black’s at 1012 (boldface omitted). Thus, a limitation is a restriction or restraint on when an action can be commenced by a party. Hence, the provisions of ORS 30.275(9) are unambiguous. See also Baker, 343 Or at 85 (Durham, J., concurring) (“I conclude that ORS 30.275(9) is not ambiguous, and I draw that conclusion from an examination of statutory text and context.”).
*554 Notably, in Baker, this court thoroughly reviewed the legislative history of ORS 30.275(9) in examining the interplay of that statute with ORS 12.020, which defines when an action is deemed to have been commenced. We held that the notwithstanding clause of ORS 30.275(9) does not bar the application of ORS 12.020 to OTCA claims. In so doing, we determined that the legislative history of the notwithstanding clause did not disclose a specific explanation as to why the drafters added the clause. However, we concluded that “the legislative history confirms that, in amending what is now ORS 30.275(9), the legislature focused solely on the question of statutes of limitations.” Baker, 343 Or at 82-83.
In Baker, based on the legislative history, we did not consider it reasonable to assume that the legislature intended to cut off the additional time to commence an action provided for under ORS 12.020(2). That statute allowed an additional 60 days to serve process beyond the two-year statute of limitation enacted under the OTCA. We explained:
“Nothing in the legislative history suggests that the legislature intended to depart from the longstanding rule of procedure found in ORS 12.020(2), nor does it suggest that the legislature intended to deny children and persons with mental disabilities bringing OTCA claims the advantage of a tolling provision that is available to them in every other action.”
Id. at 82.
Similarly, in this case, nothing in the legislative history suggests that the legislature, in enacting ORS 30.275(9), intended to nullify any survival actions it earlier established when enacting ORS 30.075(1). That is particularly so when the legislative history relating to ORS 30.075(1) discloses a legislative purpose to give additional life to injury actions by allowing a personal representative to commence an action after the death of the injured person. Here, it is not reasonable to assume that the legislature considered ORS 30.075(1) a “statute providing a limitation on the commencement of an action” within the meaning of ORS 30.275(9).
*555 As previously indicated, ORS 30.075(1), operating as a survival statute, is fundamentally different from a statute of limitation, which primarily affects the time within which a stale action may be brought. This court’s case law sheds light on the nature and purpose of statutes of limitation. In Johnson v. Star Machinery Co., 270 Or 694, 530 P2d 53 (1974), we stated:
“In general, there are usually two reasons which are advanced as justification for the imposition of such statutes. The first concerns the lack of reliability and availability of evidence after a lapse of long periods of time. * * *
“The second rationale concerns the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability!.]”
Id. at 700-01 (citation omitted); see also Wilder v. Haworth, 187 Or 688, 695, 213 P2d 797 (1950) (commenting on statutes of limitation as desirable statutes of repose after the lapse of a reasonable period of time); King v. Mitchell, 188 Or 434, 442, 214 P2d 993 (1950) (same). As previously explained, the insertion of procedural elements into ORS 30.075(1) by the legislature did not make this survival statute a statute of limitation.
Considering the text, context, and legislative history of ORS 30.075(1) and ORS 30.275(9), I therefore conclude that ORS 30.075(1) is not subject to the time provisions of ORS 30.275(9). That conclusion is also supported by the rationale of Baker, 343 Or 70.
B. The majority has adopted an unreasonable construction of ORS 30.075(1) and ORS 30.275(9).
The majority has adopted an unreasonable construction of the pertinent statutes and thereby has failed to apprehend the essential purpose of ORS 30.075(1) as a survival statute. A “survival statute” is a “law that modifies the common law by allowing certain actions to continue in favor of a personal representative after the death of the party who could have originally brought the action.” Black’s at 1583. The substantive effect of a survival statute is to give *556 additional life to an existing action that would have been destroyed under common law but for the legislative enactment. The nature of a survival statute is sharply distinguishable from a statute of limitation, which affects the time within which a stale action may be brought. See, e.g., M.S. v. Dinkytown Day Care Center, Inc., 485 NW2d 587 (SD 1992) (hereinafter Dinkytown); Keefe v. Glasford’s Enterprises, Inc., 248 Neb 64, 532 NW2d 626 (1995); Swindle v. Big River Broadcasting Corp., 905 SW2d 565 (Tenn Ct App 1995).
The majority opinion appears to be the only reported case in the country where a survival statute has been held to be a statute of limitation. To the contrary, other reported cases bearing on the subject have held that a survival statute, by its very nature, is not a statute of limitation. In the context of survival actions against dissolved corporations, the Supreme Court of Nebraska has recognized the fundamental difference between a survival statute and a statute of limitation:
‘“Section 21-20,104 is a survival statute, not a statute of limitations, and, as such, gives life to claims which would otherwise be extinguished. Absent the survival statute, a dissolved corporation could not sue or be sued. Therefore, the rights created by the statute are the right of the corporation to sue during the survival period and the right of others to sue the corporation during the same period.’”
Keefe, 248 Neb at 67, 532 NW2d at 629 (citations omitted; quoting Licht v. Association Servs., Inc., 236 Neb 616, 623, 463 NW2d 566, 571 (1990)). The court further explained:
“‘If § 21-20,104 is a survival statute rather than one of limitations, not even equity could estop its application. For, while a statute of limitations is an period of repose designed, if asserted, to prevent recovery on stale claims, a survival statute gives life to a substantive right that but for the statute would have been destroyed.’”
Id. at 68, 532 NW2d at 629 (citations omitted; quoting Van Pelt v. Greathouse, 219 Neb 478, 484, 364 NW2d 14, 19 (1985)).
*557 The Supreme Court of South Dakota, in the same context, has also noted the same clear distinction between these two types of statutes:
“‘[A] statute of limitations affects the time that a stale claim may be brought while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute. These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation’s existence to be asserted.’”
Dinkytown, 485 NW2d at 587 (quoting Davis v. St. Paul Fire & Marine Ins. Co., 727 F Supp 549 (DSD 1989)); see also Gomez v. Pasadena Health Care Management, Inc., 246 SW3d 306 (Tex Civ App 2008) (same); Swindle, 905 SW2d 565 (same).
The majority erroneously concludes that, by enacting ORS 30.075(1), “the legislature created new rights and liabilities arising from personal injury where an injured person dies before or after commencing an action.” Bell v. Tri-Met, 353 Or at 543. However, it is well established that a survival action “derives from the claim that a decedent would have had — such as for pain and suffering — if he or she had survived.” Black’s at 1583. The rights and liabilities of the parties in a survival action are effectively determined as of the time of injury under common law. Those rights and liabilities define the action, which survives the death of a party under a survival statute. See, e.g., Hern v. Safeco Ins. Co. of Illinois, 329 Mont 347, 125 P3d 597 (2005) (survival action raises claims that came into existence when decedent still alive with personal representative asserting those claims); DeLane ex rel. Delane v. City of Newark, 343 NJ Super 225, 778 A2d 511 (2001). ORS 30.075(1) simply expands the life of an injury action and provides a procedure for the prosecution of the action by a personal representative. It does not create additional rights and liabilities.
Moreover, the majority’s reliance on Wiebe v. Seely, 215 Or 331, 335 P2d 379 (1959), for the proposition that a survival statute creates new rights and liabilities is misplaced. In Wiebe, the court declined to give retroactive effect to an amendment to a survival statute passed in 1953 that *558 would have increased the plaintiffs recovery to $20,000, because a lower limit of $15,000 was in effect at the time the plaintiff was injured in 1951. Wiebe thus addresses the retroactive effect of legislation and has no bearing on the statutory construction issues presented in this case.
The majority’s reliance on Mendez v. Walker, 272 Or 602, 538 P2d 939 (1975), is also misplaced. In Mendez, the plaintiff timely filed his injury action, but the defendant died before the case was brought to trial. Under then-existing ORS 13.080, the plaintiff was required to file a motion to substitute a personal representative of the defendant’s estate within one year to continue the action. The plaintiff filed the motion two years after the defendant’s death and was therefore precluded from continuing his action. That result is unremarkable because ORS 13.080 did not operate functionally as a survival statute unless a party timely filed a motion with the court. The plaintiff did not do so, and his motion was time barred. By contrast, here, plaintiff’s personal representative timely filed this action under ORS 30.075(1).
Finally, the majority fails to recognize important substantive differences between a survival action and a wrongful death action. It is well established that the two types of actions are fundamentally different. As previously defined, a “survival action” “derives from the claim that a decedent would have had * * * if he or she had survived.” Black’s at 1583. A “survival action” is further defined as a “lawsuit brought on behalf of a decedent’s estate for injuries or damages incurred by the decedent immediately before dying. *** In contrast is a claim that the beneficiaries may have in a wrongful-death action, such as for loss of consortium or loss of support from the decedent.” Black’s at 1583. Generally, a survival action is designed to recover damages a decedent could have recovered but for his death, and a wrongful death action seeks to recover damages to beneficiaries resulting from a decedent’s death. See, e.g., Foncannon v. Phico Ins. Co., 104 F Supp 2d 1091 (WD Ark 2000); Kaufman v. Cserny, 856 F Supp 1307 (SD Ill 1994); Shield v. Bayliner Marine Corp., 822 F Supp 81 (D Conn 1993). For our purposes, it is important to emphasize that *559 a survival action extends the life of an injury action, and a wrongful death action establishes a new cause of action. Thus, a time limitation imposed from outside a survival statute will have a destructive impact on the functional operation of the survival statute. Here, the majority has effectively nullified the operation of ORS 30.075(1) as applied to all injury actions where the defendant is a public body, the injured person dies, and that person did not commence an action within two years of injury. By contrast, the application of ORS 30.275(9) to wrongful death actions reduces the time limit for a plaintiff to commence an action but does not nullify the rights of a party under the wrongful death statute.
By adopting a construction that effectively nullifies the survival provisions of ORS 30.075(1) regarding the injury actions described above, those actions will now abate at common law upon the death of such injured persons, contrary to the legislature’s intentions. The majority opinion also creates a trap for unwary family members who do not timely arrange for a personal representative to continue an action when an injured person dies in close proximity to the two-year time limitation established by ORS 12.110. For example, under the majority’s construction, family members of an injured person who dies 10 days before the two-year limit expires (with no action previously commenced) will have only those 10 days to determine that the action must be commenced and arrange for a personal representative to do so in the wake of the death. It is unlikely that the legislature intended those results by enacting ORS 30.275(9).
This court has long recognized the prudential value of not construing legislative enactments “so as to ascribe to the legislature the intent to produce what we perceive to be an unreasonable result.” McKean-Coffman v. Employment Div., 312 Or 543, 552, 824 P2d 410 (1992) (citing State v. Galligan, 312 Or 35, 39, 816 P2d 601 (1991)); see also Pacific P. & L. v. Tax Com., 249 Or 103, 110, 437 P2d 473 (1968) (same); Fox v. Galloway, 174 Or 339, 347, 148 P2d 922 (1944) (duty of court to avoid an unreasonable result in construing statute as consistent with the general policy of the legislature). Here, the majority’s construction of ORS 30.275(9) *560 leads to an unreasonable result that is inconsistent with the legislature’s purpose in enacting ORS 30.075(1).
Moreover, under the general rule for construction of statutes set out by the legislature, this court is obligated “to ascertain and declare what is, in terms or in substance contained therein, * * * and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.” ORS 174.010. Here, the majority has not adopted a construction of ORS 30.075(1) and ORS 30.275(9) that fulfills that obligation.
C. The majority opinion is inconsistent with Baker.
As previously discussed, we recently held in Baker, 343 Or 70, that the expanded time (60 days) allowed for service of process provided by ORS 12.020(2) was not a limitation on the commencement of an action within the meaning of ORS 30.275(9):
“Considering the text, context, and legislative history of ORS 30.275(9), we hold that the notwithstanding clause in ORS 30.275(9) applies only to those provisions of ORS chapter 12 and other statutes that provide a limitation on the commencement of an action. The notwithstanding clause does not bar application of ORS 12.020 to OTCA claims. Because plaintiff filed her complaint within two years of the accident and served the city within 60 days of filing her complaint, her complaint was timely under ORS 12.020(2). The city’s motion for summary judgment should have been denied.”
Id. at 83.
In Baker, we essentially viewed ORS 12.020(2) as a procedural statute and not as a “statute providing a limitation” within the meaning of ORS 30.275(9). Similarly, the procedure of allowing one year for a personal representative to file an action under ORS 30.075(1) is not a “statute providing a limitation” within the meaning of ORS 30.275(9). In my view, the majority has not reasonably distinguished this case from Baker
Significantly, in Baker, we adopted a reasonable construction of ORS 30.275(9) and ORS 12.020(2) in a manner that gave effect to both statutes. In Baker, we concluded *561 that “the legislative history confirms that, in amending what is now ORS 30.275(9), the legislature focused solely on the question of statutes of limitations.” 343 Or at 82-83. Prior to drawing that conclusion, we noted various specific statutes of limitation for various actions discussed in the legislative history. We observed that “[n]othing in the legislative history” suggested that the legislature intended to depart from the previously established rule of procedure provided for under ORS 12.020 allowing additional time for service of process. Id. at 82. In holding that ORS 30.275(9) does not bar the application of ORS 12.020 to OTCA claims, we also noted that we were not attempting to infer intent from legislative inaction:
“We note that this is not a case in which we are attempting to infer intent from legislative inaction. See Berry v. Branner, 245 Or 307, 311, 421 P2d 996 (1966) (explaining the difficulty in inferring legislative intent from inaction). Nor is it a case in which the legislature was silent regarding the subsection at issue here. Rather, the committee and witnesses explained at length that this subsection would specify the applicable limitations period of OTCA actions. We rely on that explanation in inferring that the wording adopted on April 30, 1981, addresses only periods of limitation.”
Id. at 83 n 6 (emphasis added). Here, the majority has not pointed to anything in the legislative history relating to ORS 30.275(9) to suggest that the legislature intended to depart from the previously established procedures to allow personal representatives to commence survival claims under ORS 30.075(1). As in Baker, it is not reasonable to assume from the legislative history that the legislature intended to discard previously established procedures of such significance.
Based on the foregoing authorities, I conclude that the majority’s decision in this case is erroneous and frustrates the legislature’s intentions in enacting ORS 30.075(1) and ORS 30.275(9). I therefore respectfully dissent.